### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PIPP MOBILE STORAGE SYSTEMS, INC.,   )
  )
      Plaintiff,   )
  )     No. 21 C 2104
    v.   )
  )     Judge Sara L. Ellis
INNOVATIVE GROWERS   )
EQUIPMENT INC.,   )
  )
      Defendant.   )

### OPINION AND ORDER

Plaintiff Pipp Mobile Storage Systems Inc. ("Pipp") sued Defendant Innovative Growers

Equipment Inc. ("IGE") for infringing on U.S. Patent No. 10,806,099 (the "'099 Patent"), which

describes an airflow system, used for vertical gardening, that directs airflow downward. After

the Patent Trial and Appeal Board ("PTAB") found its patent unpatentable, Pipp moved to

dismiss its complaint with prejudice. IGE then filed its motion for attorneys' fees and

nontaxable costs and a bill of costs, contending that it is the prevailing party and that this case is

an exceptional one warranting the award of attorneys' fees under 35 U.S.C. § 285. Because the

Court does not find that this case is exceptional, the Court denies IGE's motion for attorneys'

fees and nontaxable costs. The Court grants in part and denies in part IGE's bill of costs, and

taxes Pipp $19,748.83.

### BACKGROUND[1]

In October 2020, Pipp purchased the '099 Patent from Vertical Air Solutions LLC. The

'099 Patent describes a system and method of circulating air and carbon dioxide and providing

---

[1] The parties filed their briefs and accompanying exhibits under seal, also providing redacted versions. If the Court refers to a sealed document, it attempts to do so without revealing any information that could reasonably be deemed confidential. Nonetheless, if the Court discusses confidential information, it has done so because it is necessary to explain the path of its reasoning. *See In re Specht*, 622 F.3d 697, 701

light to a vertical gardening structure.  It also requires that some version of air enter a housing in a downward direction.

IGE sells the Innovative Airflow System, which circulates airflow for vertical grow racks.  IGE ships the Innovative Airflow System to its customers in parts and either IGE or another third party assembles the system on site.  On March 9, 2021, Pipp wrote IGE notifying it of the '099 Patent and asserting that IGE infringed it.  In response, IGE explained that it had already redesigned its product so that air flowed in an upward direction.  IGE further asserted that the '099 Patent was invalid as obvious given the prior art described in the Ellestad patent, WO 2017/024079 A2.  Ellestad describes a system of indoor farming modules that may include an irrigation system and an integrated airflow management system with a lighting apparatus, an air flow generator, and an air duct, but it does not include a downward direction limitation on the airflow.

Despite receiving IGE's initial arguments for why it did not infringe the '099 Patent, on April 19, 2021, Pipp sued IGE for patent infringement of claims 25–27, 45, 50, 58, and 59 of the '099 Patent under 35 U.S.C. § 278.  Independent claim 25 provides:

> A flow distribution assembly, comprising:
>
> a housing having an air inlet portion; and
>
> an elongated duct fluidly coupled to an outlet portion of the housing and having a plurality of openings defined on a lower surface of the elongated duct, wherein the elongated duct extends from the housing and where the elongated duct is configured to be positioned upon and extend along a rack and where the housing is directly secured to the elongated duct, wherein air passing through the air inlet portion is received into the housing in a downward

---

(7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality."); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (explaining that a judge's "opinions and orders belong in the public domain").

> direction and the air passing through the outlet portion is received into the elongated duct in a horizontal direction.

Doc. 140-10. Claims 26 and 27 depend from claim 25.

> Independent claim 45 provides:

> > A flow distribution system, comprising:

> > a rack having at least a first platform and a second platform positioned below the first platform;

> > a housing having an air inlet portion;

> > an elongated duct fluidly coupled to an outlet portion of the housing and having a plurality of openings defined on a lower surface of the elongated duct, wherein the elongated duct extends from the housing and where the elongated duct is configured to be positioned below the first platform and extend through the rack such that the plurality of openings are directed towards the second platform underlying the first platform, wherein air passing through the air inlet portion is received into the housing in a downward direction and the air passing through the outlet portion is received into the elongated duct in a horizontal direction; and

> > a fan fluidly coupled to the housing and extending away from the rack and where the housing is directly secured to the elongated duct.

*Id*. Claims 50, 58, and 59 depend from claim 45.

After Pipp filed its complaint, IGE disclosed seven prior art references that it claimed invalidated the '099 Patent, including the prior art described in the Hutto Patent, US Patent No. 10,674,680. Hutto describes a fan coil apparatus used to circulate air in a greenhouse. IGE did not cite the Ellestad reference in its disclosure.

IGE then moved to dismiss Pipp's claim in part, asserting that Pipp failed to properly issue notice of infringement prior to March 9, 2021. The Court granted the motion, limiting the scope of Pipp's damages to those occurring after IGE received actual notice of the alleged infringement on March 9, 2021. Doc. 48.

3

The parties subsequently proceeded to discovery, where Pipp served forty-three subpoenas on various third parties. The parties deposed over eighteen witnesses. On June 27, 2022, the Court held a claim construction hearing and issued a ruling interpreting several terms and phrases used in the alleged claims. *See* Doc. 92.

Prior to the Court's claim construction hearing, on April 27, 2021, IGE petitioned for inter partes review ("IPR") before the PTAB. The PTAB granted IGE's petition on October 27, 2022, after the Court's claim construction hearing. Several weeks later, on November 11, 2022, IGE moved to stay this case. The Court granted IGE's motion on December 5, 2022. Doc. 117. Then, on October 27, 2023, the PTAB issued a final opinion, finding the '099 Patent unpatentable as obvious given the combination of the Ellestad and Hutto prior art. Doc. 131-1. On January 5, 2024, Pipp filed a motion to dismiss its claim with prejudice, which the Court granted on January 10, 2024.[2] Doc. 134. Subsequently, IGE moved for $1,024,160.21 in nontaxable costs and attorneys' fees pursuant to 35 U.S.C. § 285 and for $46,644.06[3] in taxable costs pursuant to 28 U.S.C. § 1920.

## ANALYSIS

### I. Attorneys' Fees

For patent cases, § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position

---

[2] IGE did not join Pipp's motion and instead requested that the Court grant judgment in its favor. Pipp clarified at the January 10, 2024 hearing that it agreed that dismissing the case with prejudice grants IGE prevailing party status that allows it to seek attorneys' fees.

[3] The parties agree that the correct amount that IGE seeks for fees for printed or electronically recorded transcripts necessarily obtained for use in this case is $29,763.18 and not $30,479.93, which IGE initially listed on its bill of costs. The total amount here reflects the corrected amount for the fees for the printed or electronically recorded transcripts.

(considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). When evaluating whether a case qualifies as "exceptional," the Court considers a "nonexclusive set of factors," including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6. "A party seeking fees under § 285 must prove its case by a preponderance of the evidence." *OneSubsea IP UK Ltd. v. FMC Techs., Inc.*, 68 F.4th 1285, 1294 (Fed. Cir. 2023). The Court has discretion in evaluating the totality of the circumstances to determine whether a case qualifies as exceptional to warrant an award of attorneys' fees. *See Octane Fitness*, at 572 U.S. at 554.

IGE requests $953,892.45 in attorneys' fees and related nontaxable expenses of $70,267.76 from Pipp, claiming that Pipp never should have filed this case and that, once it had done so, it should have reevaluated the strength of its claim after receiving discovery from IGE that indicated that the '099 Patent was invalid. IGE also argues that Pipp's litigation tactics make the case an exceptional one. As explained in more detail below, the Court does not find Pipp's case so weak or its tactics so unreasonable to hold that this case is exceptional. Therefore, the Court denies IGE's motion.

### A.     Strength of Pipp's Litigating Position

Generally, a plaintiff's lack of success "does not render the case exceptional." *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010). To evaluate the strength of Pipp's position, the Court must consider both the governing law and the facts of the case. *See Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1379–80 (Fed. Cir. 2020). So long as Pipp's "infringement claims were not frivolous or

objectively unreasonable, [Pipp] was entitled to pursue those claims" and the Court should not award attorneys' fees. *Medtronic*, 603 F.3d at 954. However, attorneys' fees may be awarded where a plaintiff pursues an objectively unreasonable claim. For example, courts have found cases exceptional when a plaintiff pursues a claim based on a contractual interpretation that directly contradicted statements from its own witnesses, *Bayer CropScience AG v. Dow AgroSciences LLC,* 851 F.3d 1302, 1307 (Fed. Cir. 2017), or where the plaintiff sues for patent infringement based on an underlying patent to which it has no claim, *WiNet Labs LLC v. Motorola Mobility, LLC*, No. 20 C 1094, 2021 WL 4929220, at *4 (N.D. Ill. Sept. 22, 2021), *aff'd in part & dismissed in part*, No. 2022-1081, 2022 WL 4127535 (Fed. Cir. Sept. 12, 2022).

IGE argues that Pipp acted in an objectively unreasonable manner in pursuing its infringement claims because Pipp knew that it could not recover any damages. The parties do not dispute that Pipp could not have recovered damages prior to March 9, 2021, given the Court's order on IGE's motion to dismiss. However, the parties disagree as to whether Pipp could have recovered damages for sales of IGE's products after March 9, 2021. IGE argues that undisputed evidence shows that it had already implemented a new design as of March 9, and to the extent that any customer had an infringing product, IGE did not install the product in an infringing manner and instead sent instructions for third parties to install the products in a non-infringing way. *See Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311 (Fed. Cir. 2005) ("Because Medtronic does not itself make an apparatus with the 'interface' portion in contact with bone, Medtronic does not directly infringe."). Pipp, however, presents photos from IGE's customers showing the installation of IGE's Innovative Airflow System after March 9, 2021, where the fan pushes the airflow downward, thus infringing on the '099 Patent. Pipp also presented some evidence challenging IGE's representation that only third parties, and

not IGE, assembled the Innovative Airflow System for its customers, specifically emails from IGE's customers noting that it was IGE that installed the product. *See* Doc 163-17. The Court is not required to conduct a mini-trial on the merits at this stage. *See Spineology, Inc. v. Wright Med. Tech., Inc.*, 910 F.3d 1227, 1230 (Fed. Cir. 2018) ("Wright asks this court to basically decide the damages issues mooted by summary judgment in order to determine whether it ought to obtain attorney fees for the entire litigation. This we will not do. We will not force the district court, on a motion for attorney fees, to conduct the trial it never had by requiring it to evaluate Mr. Nantell's 'but for' calculations or royalty rates."); *Snap-on Inc. v. Robert Bosch, LLC*, No. 09 CV 6914, 2016 WL 1697759, at *6 (N.D. Ill. Apr. 28, 2016) ("Evidence of meritless claims must be reasonably clear without requiring a 'mini-trial' on the merits for attorneys' fees purposes"). Instead, the "salient inquiry is whether [Pipp's] claims were so lacking in merit" as to require Pipp to abandon its case altogether at an earlier stage. *Medtronic,* 603 F.3d at 954. Here, the Court cannot reach that conclusion. *See Romag Fasteners, Inc. v. Fossil, Inc.,* 866 F.3d 1330, 1341 (Fed. Cir. 2017) ("It is not relevant that Fossil's non-infringement defense may have been weak, if it did not rise to the level of being objectively unreasonable.").

IGE also argues that Pipp acted unreasonably because IGE presented it with evidence of the '099 Patent's likely invalidity both before Pipp filed its suit and quickly after its filing of the complaint. But "[h]aving been issued a valid patent, [Pipp] was entitled to a presumption of good faith in asserting its patent rights against [IGE] in the form of a suit for infringement." *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018). And while the PTAB ultimately agreed with IGE and invalidated the '099 Patent for obviousness in light of Hutto and Ellestad, such a finding "does not alone translate to finding its defense of the patent unreasonable." *Munchkin, Inc.*, 960 F.3d at 1380; *Inland Diamond Prod. Co. v. Cherry*

*Optical Inc.*, No. 20-C-352, 2024 WL 448307, at *1 (E.D. Wis. Feb. 6, 2024) (denying motion

for attorneys' fees despite having found plaintiff's patent invalid for obviousness because

"Plaintiff's arguments against issue preclusion and invalidity were not so frivolous to render this

case exceptional"). And, again, the standard for an exceptional case is not whether Pipp lost its

argument, but whether it took an unreasonable position. *Cf. Eko Brands, LLC v. Adrian Rivera*

*Maynez Enters., Inc.*, 946 F.3d 1367, 1376 (Fed. Cir. 2020) (granting attorneys' fees because the

court found it unreasonable that the patent holder never tried to prove any element of non-

obviousness at trial despite conveying to the court that it intended to present evidence on the

issue at trial).

Finally, IGE argues that Pipp engaged in gamesmanship in pursuing an opposing claim

construction position in the IPR proceeding than the one it took before this Court. The Court

disagrees. Adjusting a claim interpretation between the claim construction hearing before this

Court and the IPR proceeding does not necessarily reflect bad faith, particularly because the

Court and the PTAB evaluate claims under different standards of review. *See Sarif Biomedical*

*LLC v. Brainlab, Inc.*, 725 F. App'x 996, 1001 (Fed. Cir. 2018) (determining that a different

argument before the PTAB and the district court does not necessarily reflect an exceptional case

because of the different standards of review). Therefore, the Court finds that Pipp's claims were

not objectively unreasonable or frivolous as to justify awarding attorneys' fees.

### B. Pipp's Litigation Conduct

IGE also argues that Pipp's litigation conduct makes the case an exceptional one. "[A]

district court may declare a case exceptional based on unreasonable and vexatious litigation

tactics, even where it finds the legal theories advanced not objectively baseless." *SFA Sys., LLC*

*v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015). For example, "the use of litigation to

achieve a quick settlement with no intention of testing the strength of the patent or its allegations of infringement" would constitute an abuse of process that rises to the level of exceptional conduct warranting attorneys' fees. *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1377 (Fed. Cir. 2020).

Here, IGE asserts that Pipp's actions, namely issuing subpoenas to forty-three of IGE's customers, show that Pipp only used the litigation to disrupt IGE's relationships with its customers. The Court previously managed IGE's concern when it ordered that Pipp could not take every deposition it noticed and instead stayed the third-party depositions pending the production of relevant documents from IGE. *See vPersonalize Inc. v. Magnetize Consultants Ltd.*, 841 F. App'x 234, 239 (Fed. Cir. 2021) (declining to award attorneys' fees for conduct with which the court previously dealt). Further, the Court did not find Pipp's subpoenas to IGE's customers so unreasonable as to completely foreclose it from requesting further discovery. Instead, the Court left open the possibility for Pipp to request additional discovery if needed—for example, if Pipp proceeded to the damages stage. *See* Doc. 115.

Pipp also did not engage in other tactics that courts find constitute bad faith litigation. The record does not suggest that Pipp destroyed relevant documents, misrepresented the law of claim construction, or introduced unreliable expert testimony. *See SFA Sys.*, 793 F.3d at 1350 (compiling examples of prior instances of bad faith litigation that warranted awarding attorneys' fees). It did not delay its litigation tactics—indeed, it dismissed its claim soon after the PTAB invalidated the '099 Patent. *See Sarif Biomedical LLC v. Brainlab, Inc.*, 725 F. App'x 996, 1001 (Fed. Cir. 2018) (finding that the plaintiff did not engage in a nuisance suit but instead properly moved to dismiss its claim after the district court found the patent indefinite). Such conduct does not rise to exceptional behavior. *See O2 Media, LLC v. Narrative Sci. Inc.*, No. 15-CV-05129,

9

2017 WL 25175, at *2 (N.D. Ill. Jan. 3, 2017) (denying motion for attorney's fees where "O2 Media attempted to enforce its patents, which it notes were entitled to a presumption of validity, and accepted this Court's rulings once it found the patents were invalid."). As such, the Court does not find that the totality of the circumstances reflect that Pipp's actions were exceptional and so it denies IGE's motion for attorneys' fees and nontaxable costs.

## II.     Bill of Costs

Federal Rule of Civil Procedure 54(d) provides that unless a federal statute, the Federal Rules, or the Court provides otherwise, costs should be allowed to the prevailing party in a litigation. Pursuant to 28 U.S.C. § 1920, the Court may tax as costs certain fees, including those for service of summons and subpoenas, "transcripts necessarily obtained for use in the case," and "exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." The prevailing party is presumptively entitled to costs. *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005). The prevailing party maintains the burden of establishing the reasonableness and necessity of the potentially recoverable costs. *Trs. of Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). If the prevailing party satisfies that burden, the losing party bears the burden of showing that the costs are inappropriate. *Beamon*, 411 F.3d at 864. The Court enjoys "wide discretion in determining and awarding reasonable costs." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 642 (7th Cir. 1991).

IGE seeks to recover $46,644.06 in costs. First, IGE seeks $450 in fees of the clerk for *pro hac vice* applications. It also requests $167.03 in fees for service of summons and subpoena for documents sent to three witnesses. IGE seeks $29,763.18 in deposition fees, including the costs of the final transcripts, the exhibits, the delivery of the transcripts, court reporter

10

attendance, translations of transcripts, video syncing fees, MLV connect fees, certain draft transcripts, certain electronic copies, and the use of GoGreenScripts Lit. IGE then seeks $4,744.85 arising from costs for its expert witness' deposition testimony and witness meals. IGE also asks for $11,492 arising from the preparation of electronically produced documents. Finally, IGE requests $27 in other costs, namely the express delivery of documents to one of its attorneys. Pipp objects to every category, except the fees for service of summons and subpoenas. The Court will address each category in turn.

### A. Fees of the Clerk

IGE initially moved to recover costs for *pro hac vice* applications. However, it has since withdrawn its request to comply with the Seventh Circuit's holding that *pro hac vice* fees are not recoverable under 28 U.S.C. § 1920. *See Canter v. AT&T Umbrella Benefit Plan No. 3,* 33 F.4th 949, 959 (7th Cir. 2022). Therefore, the Court does not tax the $450 IGE initially sought as fees of the clerk.

### B. Fees for Service of Summons and Subpoenas

IGE seeks $167.03 for the expenses of delivering packages to three witnesses. As Pipp does not object to these fees, the Court awards this amount to IGE.

### C. Transcript Fees

IGE seeks costs relating to eighteen depositions. Pipp challenges IGE's requests for fees related to the transcripts, court reporter attendance, exhibit fees, translations, video syncing, and rough drafts. As discussed below, the Court finds it appropriate to tax Pipp $14,636.80 for the costs arising from the depositions.

11

### 1.    Transcript Costs

Section 1920(2) permits IGE to recover fees for transcripts necessarily obtained for use in the case, but it limits the recoverable cost to the regular copy rate established by the Judicial Conference of the United States in effect at the time the transcript or deposition was filed unless another rate was previously provided for by order of the Court.  N.D. Ill. LR 54.1(b).  At the time the parties obtained the transcripts, the governing transcript fee rates are $3.65 per page for an original transcript and $0.90 per page for a copy.  *See* N.D. Ill. General Order 23-0015, https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_clerksoffice/rules/admin/pdf-orders/General%20Order%2023-0015%20%20Increase%20Transcript%20Fee%20Rates_.pdf. To the extent that the cost per page of a transcript exceeds $3.65, the Court reduces the overall cost of the transcript to reflect the proper cost per page.

IGE requests costs for the transcripts of fourteen witness' depositions.  The parties dispute how many pages of a deposition transcript should be included in calculating the total cost of the transcripts.  Pipp argues that appended pages in the transcripts should not be included, while IGE argues that such pages are necessary to assist attorneys in locating topics within the transcript.  Courts do not tax indexes "because they are considered to be prepared for the benefit of [the party] and are not necessary to the litigation."  *Surratt v. Chi. Transit Auth.*, No. 03 C 2228, 2005 WL 946873, at *2 (N.D. Ill. Apr. 18, 2005); *see also Avanzalia Solar, S.L. v. Goldwind USA, Inc*., No. 20 C 5035, 2023 WL 5804232, at *2 (N.D. Ill. Sept. 7, 2023) (declining to tax fees for indexes where prevailing party argued that the indexes were commonly included with the deposition but did not provide any explanation for why they were reasonable

or necessary to the case). Therefore, the Court will not include the index pages as part of the

taxable cost. Making these adjustments, the Court taxes Pipp $9,767.40[4] in transcript costs.

### 2. Exhibit Fee Rates

IGE next seeks to recover $1,282 for transcript exhibits, based on a cost of $0.25 per

page for most exhibits.[5] Pipp does not dispute that IGE may recover the cost for the exhibits

included with the transcripts but requests that the Court reduce the cost per page of the exhibits

to $0.10 per page to align with the charge permitted for copies. *See Walker-Dabner v. Dart*, No.

15-CV-0942, 2019 WL 13256095, at *2 (N.D. Ill. July 22, 2019) (allowing a charge for scanning

exhibits but reducing the rate to "the charge allowed for copies"). Courts in this district consider

photocopying rates between $0.10 and $0.20 per page reasonable. *See Hillmann v. City of

Chicago*, No. 04 C 6671, 2017 WL 3521098, at *12 (N.D. Ill. Aug. 16, 2017) (collecting cases).

Accordingly, the Court will tax the cost for scanned exhibits at a rate of $0.15 per page, resulting

in a total cost of $733.65 for the deposition exhibits. *See Pezl v. Amore Mio, Inc.*, No. 08 C

3993, 2015 WL 2375381, at *7 (N.D. Ill. May 13, 2015) (characterizing as reasonable a range

from $0.15 to $0.165 per page for copies of documentary evidence); *Harkins v. Riverboat Servs.,

Inc.*, 286 F. Supp. 2d 976, 982 (N.D. Ill. 2003) (finding a charge of $0.15 per page reasonable for

copies of, among other things, "exhibits for depositions and trial").

---

[4] The Court calculated this total by multiplying $3.65 by 2,676 pages, which is the total page count for the fourteen deposition transcripts. The Court arrived at the total deposition page count by adding the following: 84 pages for William Broz; 343 pages for Keith Tolger; 209 pages for Matthew Bogner; 169 pages for James Cunningham; 138 pages for Paul Sampedro; 114 pages for Dean Regan; 148 pages for Michael Trzpit; 491 pages for Christopher Mayer; 279 pages for Craig Umans; 166 pages for Charlie Naone; 79 pages for Doug Marvin; 118 pages for John Ritter; 110 pages for Kathryn Reynolds; and 228 pages for Bruce Zierk.

[5] Ritter's deposition exhibits cost $0.50 per page.

### 3. Transcript Delivery Fees

IGE seeks $64.90 for delivery, shipping, and handling fees. Generally, shipping costs "are considered ordinary business expense[s] and may not be charged in relation to obtaining transcripts." *Pezl*, 2015 WL 2375381, at *4 (citations omitted) (internal quotations omitted); *see also SP Techs., L.L.C. v. Garmin Int'l, Inc.*, No. 08 CV 3248, 2014 WL 300987, at *4 (N.D. Ill. Jan. 10, 2014) (disallowing costs associated with the shipping or delivery of deposition transcripts); *Heneghan v. City of Chicago*, No. 09 C 759, 2011 WL 4628705, at *2 (N.D. Ill. Oct. 3, 2011) (the court "has repeatedly held that shipping and delivery fees constitute an ordinary business expense, and as such will not award them in this case"). While the Court has discretion to tax delivery charges "incidental" to the taking of a deposition, *see Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995), IGE has not provided any reason why it incurred the delivery charges or why the Court should exercise its discretion to tax these charges. *See Chi. Bd. Options Exch., Inc. v. Int'l Secs. Exch., L.L.C.*, No. 07 CV 623, 2014 WL 125937, at *3–4 (N.D. Ill. Jan. 14, 2014) (denying costs for delivery charges because delivery was for defendant's convenience and was not reasonable and necessary). IGE attempts to argue that Pipp has not provided a basis for why the costs were not necessary; however, the burden first lies with IGE to explain why the costs *were* necessary. *Druckzentrum Harry Jung GmbH & Co. KG v. Motorola, Inc.*, No. 09–cv–7231, 2013 WL 147014, at *3 (N.D. Ill. Jan 11, 2013) (denying costs for delivery fees because defendant made no attempt to explain why the fees were reasonable or necessary). Therefore, the Court does not find that IGE can recover the delivery fees.

### 4. Court Reporter Attendance Fees

Next, Pipp challenges the charges for the court reporter attendance fees for the Sampedro and Ritter depositions, noting that they should not exceed the cost per hour set by the Local

Rules. N.D. Ill. LR 54.1(b); *See Harney v. City of Chicago, 702 F. 3d 916*. Under Rule 54.1, the court reporter attendance fee "shall not exceed $110 for one half day (4 hours or less), and $220 for a full day." *See* N.D. Ill Transcript Costs, https://www.ilnd.uscourts.gov/Pages.aspx? rsp2kxYIAI6Z3skP0PESA+q3bXKkfRyo. Because both the Sampedro and Ritter depositions lasted four hours or less, the Court reduces the attendance fees for each of these depositions to $110.

Pipp also objects to IGE's request for court reporter attendance fees that it incurred for the Reynolds, Cunningham, and Naone depositions because IGE did not provide an hourly amount charged by the court reporter. The Court generally agrees with IGE that Pipp's argument should not prevent IGE from recovering at least some fee for the court reporter's attendance because the parties can calculate the hourly fee by dividing the total fee by the length of the deposition. However, neither party informed the Court of the total deposition time for these witnesses, so the Court does not have the requisite information to determine the court reporters' hourly fees. As such, the Court presumes that the depositions did not exceed a half day, and therefore taxes $110 for the court reporter attendance fees for each of these depositions.

Finally, Pipp objects to the overtime rates of the reporters at the Umans and Tolger depositions. As an initial note, the Court caps the 8-hour deposition cost at the recorded rate of $220 an hour. However, as IGE notes, the Court may tax overtime costs of court reporters where reasonable, particularly because "it is likely that if the depositions were continued for an extra day other related and acceptable fees, such as the court reporter's appearance fee would be incurred." *Yates v. City of Chicago*, No. 18 C 2613, 2021 WL 6063862, at *2 (N.D. Ill. Dec. 22, 2021), *aff'd sub nom. Yates v. City of Chicago, Illinois*, 58 F.4th 907 (7th Cir. 2023); *see also Druckzentrum*, 2013 WL 147014, at *2. The Court finds it reasonable to tax Pipp for the

overtime costs for Tolger and Umans, who only exceeded their time by a half hour and a little over an hour respectively, because requiring another day of a deposition likely would have resulted in even greater costs incurred. However, the Court limits the amount of overtime to the half-day fee of $110. Because the overtime costs for Tolger's deposition do not exceed $110, the Court taxes them in full. By contrast, the Court reduces the overtime fees for Umans' deposition to $110. In sum, the Court allows IGE to recover $282.50 and $330 in court reporter attendance fees for the depositions of Tolger and Umans respectively.

In sum, the Court taxes Pipp $1,287.50 in court reporter attendance fees.

### 5. Translations

Pipp objects to IGE's requests for costs of the Japanese translations of certain deposition transcripts, asserting that they were requested for a different and unrelated matter. IGE offers no argument justifying their costs of translation, so the Court will not tax those costs.

### 6. Video Syncing Fees and MLV Connect Fees

Pipp argues that the Court should not award IGE the video syncing fees it requests for the Feltz, Zabler, and Zierk depositions or the MLV Connect Fees for the depositions of Tolger, Bogner, Cunningham, Sampedro, Umans, Naone, Ritter, and Reynolds because IGE failed to explain their necessity. Courts have permitted parties to recover costs associated with synchronization of deposition videos where "the video is necessarily obtained for use in the case." *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, No. 08 C 0242, 2011 WL 5008425, at *3 (N.D. Ill. Oct. 20, 2011) (permitting recovery of synchronization fees where deposition videos could have been used at trial); *see also Specht v. Google Inc.*, No. 09 C 2572, 2011 WL 2565666, at *2 (N.D. Ill. June 27, 2011) (permitting video and synchronization fees for deposition of a witness who had health issues and may not have been available at trial). Here, IGE has simply

16

recognized that courts permit video synchronization costs but has failed to explain the need for synchronization in this case. Therefore, the Court will not tax the video synchronization costs.

By contrast, IGE explains that MLV Connect grants access to the deposition and provides the necessary functions for conducting a remote deposition. Courts have generally permitted a party to recover the costs "necessarily related to the video deposition" when it occurred remotely during the Covid-19 pandemic. *See Africano v. Atrium Med. Corp.,* No. 17-CV-7238, 2022 WL 1989450, at *8 (N.D. Ill. June 6, 2022) (allowing defendant to recover costs for the court reporter's virtual deposition platform when defendant provided documentation to support the costs); *Siwak v. Xylem, Inc.*, No. 19 C 5350, 2021 WL 5163289, at *1 (N.D. Ill. Nov. 5, 2021) (permitting recovery of costs incurred for the video deposition including "video-electronic access" because it was reasonable for the witness to sit for a remote video deposition). So the Court will tax Pipp $200 in MLV Connect Fees.

### 7. Rough Draft, Electronic Copy, and GoGreenScripts Lit

Finally, Pipp argues that IGE should not recover fees relating to the rough draft, electronic copy, and GoGreenScripts Lit for several depositions as they constitute services for the convenience of counsel. IGE explains that the rough transcripts were necessary because these depositions occurred within a week of at least one other deposition. Courts have awarded costs for rough drafts of deposition transcripts where a short amount of time passed between depositions. *See Yates*, 2021 WL 6063862, at *2 (taxing costs of draft transcripts when two key depositions had been noticed for the following week); *Washington Cnty. Water Co. v. City of Sparta*, No. 3:20-CV-1052-NJR, 2024 WL 128819, at *2 (S.D. Ill. Jan. 11, 2024) (taxing costs for rough draft of deposition that was taken eight days before another). *But see DSM Desotech, Inc. v. 3D Sys. Corp.,* No. 08 CV 1531, 2013 WL 3168730, at *4 (N.D. Ill. June 20, 2013) (not

taxing the costs of the "rough drafts" of transcripts, finding that the services were for the convenience of counsel). Here, the depositions of Regan, Mayer, Umans, Naone, and Marvin occurred within a two-week period between October 7 and October 21, 2022. Given the quick turnaround between each of these depositions, the Court finds the additional cost justified. *Yates*, 2021 WL 6063862, at *2. However, the Court does not find the same rationale applies to Zierk's deposition. Zierk's deposition, which occurred on November 16, 2022, occurred nearly three weeks after the other depositions. It is unclear to the Court whether another deposition occurred within the week after Zierk's such that IGE would require the draft deposition. The Court therefore will tax Pipp $2,648.25, the cost for the draft transcripts excluding Zierk's.

As for the electronic copies and the GoGreenScripts Lit costs, IGE fails to explain why either constitute necessary costs. Therefore, the Court does not award those costs. *See Decker v. Receivables Performance Mgmt., LLC*, No. 17 CV 4152, 2020 WL 13610564, at *2 (N.D. Ill. Jan. 30, 2020) (declining to tax a rate for a "litigation package" where the prevailing party did "not explain[ ] why [that] service[ ] [was] necessary"); *Bacerott v. Smetters*, No. 12 CV 3433, 2017 WL 2800095, at *1 (N.D. Ill. Mar. 6, 2017) (declining to tax the cost for a litigation package); *Gilbert v. City of Chicago*, No. 08 CV 4698, 2010 WL 3087453, at *2 (N.D. Ill. Aug. 4, 2010) (declining to award costs for "CD Depo Litigation Package").

### D. Fees for Witnesses

Pipp objects to two categories of fees that IGE seeks to recover related to its witnesses: expert witness fees and lunch for deposition witnesses. As explained below, the Court awards $4,615 for fees for witnesses.

18

### 1.    Expert Witness Fees

First, IGE seeks costs associated with William Broz's preparation for his deposition under 28 U.S.C. § 1920(3).  Pipp objects, arguing that IGE cannot recover the costs incurred for preparation as they go beyond the $40 per day allowance for attendance at a deposition allowed by 28 U.S.C. § 1821(b).  Section 1920(3) authorizes a prevailing party to recover witness-related costs, including the witness fee for testifying as set forth in 28 U.S.C. § 1821.  *LG Elecs.*, 2011 WL 5008425, at *4; *see also Majeske v. City of Chicago*, 218 F.3d 816, 825-26. (7th Cir. 2000) (recognizing that 28 U.S.C. §§ 1821 and 1920(3) collectively authorize awarding certain witness fees).  Section 1821 limits recoverable witness fees for testifying to $40 per day.  *See Lane v. Person*, 40 F.4th 813, 815 (7th Cir. 2022) (reducing a witness' one-day witness fee to $40, noting that "[a]lthough § 1920 includes witness fees as an expense that may be taxed as a cost, another statute, 28 U.S.C. § 1821, more specifically addresses the allowable amount . . . Section 1821(b) limits Nelson's fee to $40 per day, and no other authority allows more.").

Courts in this district have concluded that costs associated with the time an expert witness spent preparing for a deposition and are recoverable under Federal Rule of Civil Procedure 26(b)(4)(E).  *LG Elecs.*, 2011 WL 5008425, at *4 (permitting recovery of expert witness deposition preparation).  To determine whether to award costs for deposition preparation time, courts evaluate "the preparation time in relation to the deposition time, and the nature or complexity of a case, to establish a reasonable ratio of preparation time to actual deposition time for the case."  *Brumfield, Tr. for Ascent Tr. v. IBG LLC*, No. 10 C 715, 2022 WL 972277, at *6 (N.D. Ill. Mar. 31, 2022), *appeal dismissed*, No. 2022-1630, 2022 WL 16707285 (Fed. Cir. Nov. 4, 2022).  Courts have found a ratio of three-to-one preparation to deposition time reasonable in similar patent cases.  *See id.*; *Se-Kure Controls, Inc. v. Vanguard Prod. Grp., Inc.*, 873 F. Supp.

19

2d 939, 956 (N.D. Ill. 2012) (applying a three-to-one preparation to deposition time to award expert preparation costs). Here, Broz spent 6.7 hours preparing for his 3.2-hour deposition. As this falls within the three-to-one ratio, the Court will award the $4,615 requested for Broz's deposition preparation.

### 2. Deposition Witness Lunches

IGE also seeks costs for two lunches with its witness, Mayer. Pipp objects to the cost because the receipts do not distinguish between the witness' meals from the attorneys' meals, and "it is inappropriate to have defendants pay for the food and local transportation costs of opposing counsel" when the attorneys "would have . . . incurred [the costs] regardless of this litigation." *Harper v. City of Chi. Hts.*, No. 87 C 5112, 1994 WL 710782, at *5 (N.D. Ill. Dec. 16, 1994). Pursuant to 28 U.S.C. § 1821(d)(2), a party can recover subsistence costs for witnesses up to an allotted per diem. *See Berry Plastics Corp. v. Intertape Polymer Corp.*, No. 310CV00076RLYMPB, 2017 WL 167829, at *4 (S.D. Ind. Jan. 17, 2017). However, as Pipp notes, the bills covered meals for both Mayer and two of IGE's attorneys. Because attorney meals are not recoverable, and because IGE has failed to delineate the specific amount it spent on its witness' meals, the Court will not allow it to recover for the requested witness meals. *See id.* at *4 n.2.

### E. Exemplification Costs

Next, Pipp objects to IGE's requested fees related to exemplification, data processing, and electronic processing. Pipp argues that costs associated with electronically stored information ("ESI"), such as collecting, de-deduplicating, and processing data, do not fall within the copying costs recognized under 28 U.S.C. § 1920(4). Section 1920(4) permits taxation of fees "for exemplification and the costs of making copies of any materials where the copies are

20

necessarily obtained for use in the case." The Seventh Circuit has recognized that costs for "converting computer data into a readable format in response to . . . discovery requests" is recoverable under § 1920. *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). However, it has not provided guidance on the "outer boundary" of what ESI costs may be recovered under § 1920(4). *See Sterling Nat'l Bank v. Block*, 984 F.3d 1210, 1226 (7th Cir. 2021) (recognizing a circuit split in determining what ESI costs fall within § 1920(4) but leaving the issue for the district court to decide on remand). In the absence of instruction from the Seventh Circuit, other courts in this district have relied on guidance from the Third and Fourth Circuits, which interpret § 1920(4) narrowly and do not permit recovery for many ESI costs, including preserving and collecting ESI, processing ESI, keyword searching, searching and extracting data, and culling privileged material. *See Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 52 F. Supp. 3d 893, 901 (N.D. Ill. 2014) (relying on *Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 261 (4th Cir. 2013), and *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 171 (3d Cir. 2012), to deny various ESI related costs).

IGE's ESI costs can be split into two categories—processing and preparing data and applying optimal character recognition ("OCR") to the documents. Generally, courts in this district do not consider preparation and download of data recoverable under § 1920(4). *See Life Plans*, 52 F. Supp. 3d at 902 (collecting cases where courts have not taxed costs for data preparation); *Chi. Bd. Options Exch., Inc.*, 2014 WL 125937, at *9 ("CBOE may not recover expenses for creating a litigation database, 'electronic data hosting' or other steps (such as analyzing metadata or deduplication) 'leading up to' making copies of materials."). Thus, the Court will not tax the costs associated with Relativity processing or other general data processing and preparation.

21

The Court does find it appropriate to award costs related to OCR processing, however. Courts in this district have found that OCR costs may be taxed in line with the Seventh Circuit's guidance in *Hecker* because they make a document "readable."  *See Johnson v. Allstate Ins. Co.*, No. 07-CV-0781-SCW, 2012 WL 4936598, at *6 (S.D. Ill. Oct. 16, 2012) (allowing the prevailing party to recover costs for OCR-related processing because "*Hecker* permitted recovery of costs for that specific purpose [of making a document readable]").  The situations where courts have not awarded costs for OCR processing does not apply here as those courts generally find that the requesting party failed to argue that making a document searchable was reasonably necessary.  *See Life Plans*, 52 F. Supp. 3d at 903.  IGE has shown that it was reasonably necessary to incur the OCR costs because the governing ESI protocol required that the parties produce documents with "document-level searchable text."  *See* Doc. 27-1 at 7. Therefore, the Court will tax Pipp $330 for costs associated with the OCR process.

### F.     Other Costs

Finally, IGE seeks $27 for the express delivery of documents to IGE's counsel's residence.  Pipp argues such costs cannot be awarded because they are simply for the convenience of the attorneys.  The Court agrees.  "The use of the express courier services might have been a convenience to lawyers who were cutting their deadlines closely, but there is no reason to justify shifting that cost to the opposing party beyond what was reasonably necessary for the case."  *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 264 F. Supp. 2d 753, 779 (S.D. Ind. 2003).  IGE has not presented sufficient evidence for why the express delivery was necessary, so the Court will not award the $27 cost.

**G.      Summary**

In sum, the Court awards $19,748.83 in billable costs, arising from the following:

$167.03 for fees for service of summons and subpoena for documents sent to three witnesses,

$14,636.80 for deposition fees, $4,615 for fees for witnesses arising from costs from its expert

witness' deposition, and $330 for fees for exemplification arising out of the OCR costs.

## CONCLUSION

The Court denies IGE's motion for attorney's fees and nontaxable costs [140].  The Court

grants in part and denies in part IGE's bill of costs [145].  The Court taxes $19,748.83 in costs in

favor of IGE and against Pipp.


Dated: May 29, 2024

_____

SARA L. ELLIS
United States District Judge